Filed 8/14/15  In re Ashley F. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ASHLEY F. et al., Persons Coming Under the Juvenile Court Law. | D067301 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> BRANDON F., <br><br> Defendant and Appellant. | (San Diego County Super. Ct. No. SJ12842A-C) |

APPEAL from an order of the Superior Court of San Diego County, Kenneth J. Medel, Judge.  Affirmed.

Suzanne Davidson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

Brandon F. (father) appeals a juvenile court order summarily denying his petition for modification under Welfare and Institutions Code section 388.[1]  Father contends that he made a prima facie showing of changed circumstances, the proposed modification— reinstatement of reunification services—was in the minors' best interests and, therefore, the court abused its discretion by denying him a hearing on his section 388 petition.  We affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

On November 26, 2012, the San Diego Health and Human Services Agency (the Agency) filed juvenile dependency petitions pursuant to former section 300, subdivision (b) (now section 300, subdivision (b)(1))[2] on behalf of Ashley, Mia, and Miley (collectively the minors), who are sisters and were 11, seven, and five years old, respectively.  The petitions alleged that the minors had suffered, or were at substantial risk of suffering, serious physical harm or illness.  Specifically, the petitions alleged that the father had left the minors unattended and unsupervised and that he had left them in

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     In 2014 the Legislature redesignated section 300, subdivision (b) as section 300, subdivision (b)(1).  (See Historical and Statutory Notes, 73 West's Ann. Welf. & Inst. Code (2015 supp.) foll. § 300, p. 66.)  This subdivision states in part: "The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child, or the willful or negligent failure of the child's parent or guardian to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent or guardian to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse."

2

the care of their grandfather, a known alcoholic, who wrecked his vehicle while under the influence of alcohol in 2012. The petitions also alleged that both the father and mother[3] left the minors unsupervised on multiple occasions when they exchanged custody, and there was a substantial risk of suffering serious physical harm or illness within the meaning of section 300, subdivision (b). Furthermore, the petitions alleged that the father abused methamphetamine and prescription drugs, he kept a filthy home, he drove without a valid driver's license, and that the children often showed up to school in soiled clothing with dirty and unkempt hair and in need of bathing.

The Agency's detention report detailed the events leading up to the filing of the petitions. Beginning in September 2012 the Agency received multiple referrals for child abuse and/or neglect involving allegations of lack of supervision, the minors going to school hungry and with poor hygiene, and a filthy home environment. The father admitted using methamphetamine as recently as late October or early November 2012.

At the detention hearing, the court ordered (among other things) that the minors be detained at the Polinsky Child Center for placement in an approved foster home and that visitation with the father be supervised.

In December 2012 the Agency filed its jurisdiction and disposition report. In the report, the Agency recommended that the minors be declared dependents of the San Diego Juvenile Court, that the minors remain in foster care, that the father participate in reunification services, and that visits between the minors and father be supervised.

---

3    The mother is not a party to this appeal.

At the jurisdictional and dispositional hearing held in January 2013, the father submitted to the petitions, the court sustained the petitions, declared the minors dependents, removed them from parental custody, and placed them in foster care. The court advised the father he had "12 months to participate regularly and make substantive progress in court-ordered treatment programs to cooperate with or use department services, or parental rights could be terminated." The court ordered the Agency to "provide services to [the father] consistent with their case plan," and ordered the father to "comply with those services."

The Agency filed a six-month status review report, noting that the minors had been residing in a foster home since November 2012 and were doing well, but they missed their father. The father had been seeing the minors in regular supervised visits, but he had not made significant progress in the reunification services. The report also indicated that the father was attending parenting classes, but he had not yet begun his substance abuse treatment or individual therapy. The father also failed to show up for a drug test in May 2013. The Agency recommended that the father continue to have supervised visitation, that he be offered an additional six months of reunification services, and that the minors continue to be placed in foster care.

In the January 2014 12-month status review report, the Agency noted that the father had had regular visitation with the minors, but had minimally participated in his reunification services. In October 2013 the father was arrested and charged with possession of stolen property and vehicle theft. As part of a plea deal, the father enrolled in a substance abuse treatment program. He had become homeless and ~~he~~ was briefly

4

housed at the CRASH inpatient facility, but was released about two weeks later for misconduct. He was at that time participating in inpatient substance abuse treatment at the House of Metamorphosis. The agency also reported that the minors continued to progress well while remaining in foster care. The Agency recommended that the minors continue in foster care and the father be given an additional six months of reunification services.

On March 12, 2014, the date of the contested 12-month review hearing, the Agency filed an addendum report which noted that the father had been attending the House of Metamorphosis drug recovery program since December 2013, and he had been drug tested twice a month and did not test positive during this period. However, the father's case manager at House of Metamorphosis reported that, although the father continued to attend the treatment center, he was not really there because of purported medical appointments elsewhere, which affected his participation. The Agency also reported that the father "ha[d] taken slow steps to complete his services" and "ha[d] exhibited poor decision making during this reporting period such as getting arrested and getting discharged from his prior substance abuse center." The Agency further reported that "[i]t was the Agency's hope that with the help of therapy, the father would be able to gain insight about how his decisions have impacted the [lives] of his children. However, it appears that the father has not been able to gain . . . insight and continues to make excuses about the past incidents." Reversing its earlier recommendation that reunification services be extended, the Agency recommended that the services to the father be terminated and that the court set a section 366.26 hearing.

At the hearing, the court ordered that the minors remain in foster care. The court did not terminate the father's reunification services and set a date in May 2014 for the 18-month review hearing.

The Agency's 18-month status report indicated that the minors were still in the care of the foster mother and doing well. The father continued to participate in substance abuse treatment at House of Metamorphosis and was completing his required services and meetings. The father continued to pass all drug tests during this period. However, the father's therapist reported that the father had stopped attending his weekly therapy sessions in April 2014 due to his being busy. The father progressed to unsupervised visits with the minors, but then ceased contact with the minors for a period of over two weeks. The Agency reported that the father had been unable to continue attending the required services outlined in his case plan and recommended that the minors remain in foster care, but that the father continue to receive reunification services.

The court-appointed special advocate (CASA) prepared a report for the court in May 2014 in which she noted that the minors were doing well with the foster mother, but that they had expressed the desire to live with their father. The CASA noted that, after one unsupervised visit with their father, the minors returned hungry because the father took them to a movie, but then did not have enough money to buy them lunch. The CASA's report mentioned that the father enrolled in individual therapy but had been discharged after four weeks for lack of substantive progress. The CASA commended the father's efforts to comply with his case plan, but pointed out his shortcomings and recommended an additional six months of reunification services.

6

The court continued the 18-month review hearing to August 5, 2014.

In June 2014 the Agency filed an addendum to the 18-month review report in which it *again* recommended that reunification services for the father be terminated, that visits be supervised, and that the foster mother be granted educational rights for the minors. The Agency reported that in late May the father was discharged from individual therapy without meeting any of his goals and in June the father had tested positive for methamphetamine. The report revealed that the father had not complied with the House of Metamorphosis's request that he provide pay stubs as proof of employment. As a result, the father was discharged from House of Metamorphosis in May 2014.

The Agency recognized that, although the father and minors love each other, the father has been unable to put the welfare of the minors ahead of his own, as evidenced by his failure to successfully participate in drug treatment and maintain sobriety on his own. The Agency found the risk of the father's relapsing into drug abuse was "very high." The Agency stated that the minors, while under the care of the foster mother, had shown "tremendous improvement in school, self-esteem and stability." The Agency found that the father's inability to maintain sobriety and fully participate in a drug treatment program severely reduced the likelihood that the minors could return to their father's care without suffering abuse or neglect and recommended termination of reunification services.

At the contested 18-month review hearing in August 2014, the court found by clear and convincing evidence that returning the minors to the father's care would create a substantial risk of detriment to their emotional and physical well-being. Noting that the

father "ha[d] not made substantive progress with the provisions of the case plan," the court ordered that reunification services to the father be terminated.

*Section 388 petition*

In December 2014 the father filed his section 388 petition seeking modification of the order terminating his reunification services because he could show changed circumstance. In support of the petition, the father asserted that he entered the Fellowship Center Alcohol and Drug Program (Fellowship Center Program) in August and completed the program in October. He then entered the Veterans Village of San Diego Program where he participated in various programs including individual therapy. He also asserted that he was attending another 12-step program and had been "testing clean." The father requested reinstatement of reunification services and return of the minors to his care.

The Agency filed an addendum report in January 2015 recommending that the father's reunification services not be reinstated because the father's counselor at the Fellowship Center Program reported that the father was not drug tested during his stay, and he did not attend drug education classes. The Agency noted that the father "has consistently shown that he is willing to start services but not to follow through with [them]."

At the January 2015 hearing on the father's section 388 petition, the court summarily denied the petition and stated the factual basis for its ruling (discussed, *post*). The father appeals the summary denial of his petition.

8

DISCUSSION

The father contends the court abused its discretion by summarily denying his section 388 modification petition. He asserts he made a prima facie showing of changed circumstances, and the proposed modification—reinstating reunification services—was in the minors' best interests.

A. *Applicable Legal Principles*

A party may petition the court under section 388 to change, modify or set aside a previous court order. (*In re Justice P*. (2004) 123 Cal.App.4th 181, 188.) The petitioning party has the burden of showing, by a preponderance of the evidence, that (1) there is a change of circumstances or new evidence, and (2) the proposed change is in the child's best interests. (§ 388; *In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.) The petition must be liberally construed in favor of its sufficiency. (Cal. Rules of Court, rule 5.570(a); *In re Marilyn H.* (1993) 5 Cal.4th 295, 309.) "The parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." (*In re Marilyn H*., at p. 310.) "[I]f the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition. [Citations.] The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) "In determining whether the petition makes the necessary showing, the court

9

may consider the entire factual and procedural history of the case." (*In re Justice P.*, *supra*, 123 Cal.App.4th at p. 189.)

"We review the juvenile court's summary denial of a section 388 petition for abuse of discretion." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250, citing *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413.)

B.  *Background*

At the hearing on the father's petition for modification, the court explained its reasoning for summarily denying the petition:

> "The court is often frustrated in these cases because we give a speech early on, usually at the detention hearing, about *how important time is*.  We really want parents to get better in terms of the issues that brought you here, but *we're not willing to wait forever because kids have a right to get things done right away*.
>
> "In this case the kids . . . are . . .  three or older and so *there would be a 12-month period of time to get things done*.  And *now, we're at a 21-month period* for the father and he's in the midst of programs to help him change some prior behaviors.
>
> "[A]nd I do acknowledge that the burden of proof on a prima facie is a low burden of proof, and this court takes normally a very liberal approach on granting prima facies in this case, but the court also is *reluctant to engage in proceedings that are futile under the time frames that we have*.
>
> "[M]y view of the scheme as we know it is that *parents have 12 months on kids like this and now we're beyond the 18-month point*.  . . . I want the father to continue on his course, but I just think *it's too late at this point*.
>
> "I agree with the comment made . . . about the *extraordinary circumstances required to expand our one-year time limit down to two years, which is 24 months.  It's only in a rare and extraordinary case that we would do that, and this is not the case*.

10

"I am not going to consider the information provided by the social worker today, I'm only going to consider it from an evidentiary hearing standpoint. Two things: No. 1, I'm going to take judicial notice of the proceedings that we have in our file and the timeline that we have, and, No. 2, only the four corners of the petition itself is what I'll consider from an evidentiary standard.

"I guess what one might say is[,] I'm just saying in a generic fashion the result on prima facie might be different at a different time in this case. I can't say that one way or the other, but *it's . . . definitely the court's primary ruling here* [*that*] *it's just too late in the timeline*, so respectfully, . . . I'm going to decline the prima facie." (Italics added)

C. *Analysis*

1. *Father's claim of changed circumstances*

The father claims that the trial court erred in denying his request for an evidentiary hearing on his section 388 petition because he made a prima facie showing of changed circumstances. We disagree.

The father contends that because he enrolled in and completed the Fellowship Center Program in October 2014 and is participating in individual therapy, he has demonstrated changed circumstances. This contention is unavailing. The father did not complete the court-ordered treatment programs despite the warning from the court that a failure to complete the programs could result in termination of his parental rights. Instead, the Fellowship Center Program the father completed did not require the father to be drug tested as a condition of completion, nor did it require the father to take drug education classes.

The record indicates that the father has used methamphetamine since 1998, has abused prescription drugs, and has repeatedly demonstrated a tendency to relapse as

11

evidenced by a positive test for methamphetamine as recently as June 2014 and another, self-reported, relapse a month later. This latest relapse in July 2014 occurred 18 months after the court, in January 2013, ordered the father to comply with reunification services. The fact that he has completed the Fellowship Center Program, which did not require drug testing for completion, does not constitute prima facie evidence of a *changed* circumstance within the meaning of section 388. At most, it supports an inference of a *changing* circumstance.

Furthermore, the father's inability to complete a court-ordered drug treatment program supports the inference that the father is unable or unwilling to fully come to terms with his drug addiction, making another relapse not just likely, but possibly inevitable. The record supports the social worker's assertion in the Agency's January 2015 addendum report that the father "has consistently shown that he is willing to start services but not follow through with [them]." For these reasons, we conclude that the father has not made a prima facie showing of changed circumstances.

2. *The minors' best interests*

Even if we were to conclude that the father has met his burden of making a prima facie showing of changed circumstances, we reject his assertion that he has made a prima facie showing that the requested modification, reinstating reunification services, is in the minors' best interests.

"The concept of a child's best interest 'is an elusive guideline that belies rigid definition.'" (*In re Ethan N.* (2004) 122 Cal.App.4th 55, 66, quoting *Adoption of Michelle T.* (1975) 44 Cal.App.3d 699, 704.) The purpose of this concept is to promote a

12

child's ability to mature into a stable, well-adjusted adult. (*In re Ethan N.*, at p. 66.) The California Supreme Court has explained, "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' [citation], and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

Here, when the minors were first taken into protective custody, they had poor hygiene, lice eggs in their hair, and two of the minors had bacterial infections. Once the minors were placed in foster care, the social workers reported that the minors were progressing well. One social worker stated that the minors had shown "tremendous improvement in school, self-esteem and stability," while under the foster mother's care.

The father and minors have a strong bond, and the minors have expressed their desire to be reunited with their father. However, given the father's 17-year history of drug abuse, his inability to complete court-ordered programs and to abstain from using methamphetamine even during the period he was receiving reunification services, establishes that he still puts his own desires and needs above those of the minors. Furthermore, the father displayed a pattern of poor judgment when interacting with the minors during the reunification services period. On one occasion, the father took the minors to the movies, but did not have enough money to buy them lunch afterward, and returned them to the foster mother hungry. On another occasion, he entrusted one of his young daughters with a large amount of cash for an unknown purpose. The father also engaged in criminal activity during the proceedings in this case, resulting in his arrest.

13

As the court emphasized in denying the section 388 petition, the father was given reunification services well beyond the usual 12-month period to resolve the issues that resulted in the minors' being taken into protective custody. The court decided, and we agree, that he failed to resolve those issues, making any further reunification services futile.

The record indicates that the minors are currently placed with a very organized and loving foster mother, in whose care the minors have demonstrated significant progress in their mental and physical well-being, and also in their educations. One social worker even noted that "the [minors] have shown comfort in the presence of the foster mother." The foster mother has indicated a willingness to keep the minors long-term or adopt them if reunification services proved unsuccessful.

For all of the foregoing reasons, we conclude the court did not abuse its discretion by summarily denying the father's section 388 petition for modification.

DISPOSITION

The order is affirmed.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

Prager, J.*

*  Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14